**SMALLEY & COMPANY,**
Plaintiff–Appellant,

v.

**EMERSON & CUMING, INC.,**
Defendant–Appellee.

No. 92–1335.

United States Court of Appeals,
Tenth Circuit.

Dec. 30, 1993.

Sean R. Gallagher (Daniel R. Satriana, Jr., with him on the briefs), of Hall & Evans, Denver, CO, for plaintiff-appellant.

Bobbee J. Musgrave (B. Lawrence Theis and Jane G. Ebisch with her on the brief), of Musgrave & Theis, Denver, CO, for defendant-appellee.

Before LOGAN, SETH and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Smalley & Company (Smalley) appeals from summary judgment entered in favor of defendant Emerson & Cuming, Inc. (E & C) on all of Smalley's claims. Smalley alleged four federal antitrust violations: (1) allocation of the market and price-fixing, (2) monopolization, (3) conspiracy to monopolize, and (4) attempt to monopolize, in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2; and four state law claims: (1) breach of contract, (2) promissory estoppel, (3) tortious interference with prospective contract, and (4) violation of the Colorado Restraint of Trade and Commerce Act, Colo.Rev.Stat. §§ 6–4–101 to 6–4–108.

■ On appeal, Smalley argues that it presented enough evidence to preclude summary judgment on its § 1 price-fixing and market allocation claims, and that the district court erred in concluding that Smalley's narrow definition of the relevant product market was unreasonable. When considering a grant of summary judgment we review the district court's conclusions of law de novo, and construe the record in the light most favorable to the party opposing summary judgment. *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 647 (10th Cir.), *cert. denied,* —— U.S: ——, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992).

The district court opinion, reported as *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503 (D.Colo.1992), contains an accurate and thorough recitation of the relevant facts. *See id.* at 1506–08. We only summarize them briefly for our discussion. E & C manufactures industrial adhesives and sealants. It maintains a dual distribution system for its products; it sells directly to some customers and utilizes distributors to sell to other customers. Smalley contracted with E & C in 1987 for a distributorship covering Arizona, Colorado, New Mexico, and Utah. That distributorship ended in 1990, although E & C continued supplying products to enable Smalley to fulfill its then existing contractual obligations.

Smalley filed suit following termination of the distributorship. The complaint essentially stems from two requests for price quotations from Thiokol Corporation during 1989 for the purchase of Eccobond 56C, a low-resistance electrically conductive adhesive. Both parties, as well as E.V. Roberts (Roberts), another of E & C's distributors, bid on these requests. Both contracts were awarded to Smalley. Smalley asserts that E & C terminated the distributorship because Smalley refused to participate in bid-fixing, and that E & C attempted to monopolize, conspired to monopolize, and did monopolize the market for Eccobond 56C.

■ Section 1 of the Sherman Antitrust Act prohibits contracts and conspiracies that restrain trade. Certain violations have been identified as per se illegal, requiring no additional proof of an unreasonable restraint of trade. Other § 1 violations require proof that a defendant's actions resulted in an unreasonable restraint of trade. Allegations of price-fixing and horizontal market allocation, if proven, would be per se § 1 violations. *See Arizona v. Maricopa County Medical Soc'y,* 457 U.S. 332, 343–48, 102 S.Ct. 2466, 2472–75, 73 L.Ed.2d 48 (1982).

In analyzing Smalley's allegations of price-fixing, the district court applied our analysis in *Gibson v. Greater Park City Co.,* 818 F.2d 722, 724 (10th Cir.1987). The district court first found that Smalley's evidence of price-fixing was ambiguous. It then examined whether Smalley had submitted sufficient evidence to exclude the possibility that E & C was pursuing its business interests independently and not in conspiracy with Roberts and concluded that Smalley had not established a price-fixing claim.

■ The only evidence in the record that possibly suggests bid-rigging is the testimony of Mark Neuber concerning E & C's complaint against Roberts about its payment terms in its bids on Ford Aerospace contracts. *See* II Appellant's App.Tab 7, ex. 28 at 45–46. Smalley's brief states that Neuber's testimony "is not offered as any sort of direct evidence that Roberts participated in the Thiokol bid rigging scheme," but is offered to show E & C entered conspiracies in other parts of the country to evade contractor competition requirements. Amended Opening Brief of Plaintiff–Appellant at 24 n. 3, 26. Smalley's focus is that its distributor-

ship was terminated because it would not enter a bid-rigging conspiracy with E & C with respect to Eccobond 56C sales to Thiokol. The record contains significant evidence that E & C did not want Smalley to compete with E & C for Eccobond 56C sales to Thiokol, but we found no evidence that E & C wanted Smalley to submit rigged bids to Thiokol. Thus, the district court properly granted summary judgment on the price-fixing aspect of Smalley's § 1 claim.

■ The district court also correctly applied the law of this circuit to the § 1 allegation of horizontal market allocation, concluding that dual distribution systems like that utilized by E & C are in fact vertical, not horizontal restraints on competition. *Dart Indus., Inc. v. Plunkett Co. of Oklahoma, Inc.,* 704 F.2d 496, 499 (10th Cir.1983). Because those vertical restraints did not include price-fixing, the district court analyzed them under the rule of reason. *Key Fin. Planning Corp. v. ITT Life Ins. Corp.,* 828 F.2d 635, 640–41 (10th Cir.1987). The rule of reason imposes antitrust liability if a plaintiff proves both (1) a contract or conspiracy to allocate customers and (2) that the contract or conspiracy adversely affected competition. *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). The district court determined that E & C's actions were consistent with legitimate business activity and that Smalley had not presented sufficient evidence to create a question for the jury on its § 1 market allocation claim. As a separate basis for summary judgment on this claim the district court noted that a plaintiff must properly define a relevant product market in order to establish an adverse effect on competition for purposes of the second prong of the analysis of a § 1 market allocation claim, and that Smalley too narrowly defined the relevant product market.

■ Section 2 of the Sherman Antitrust Act prohibits monopolization, including combinations, conspiracies, or attempts to monopolize. To establish a § 2 violation, a plaintiff must prove a defendant had "the power to control prices or exclude competition" in the relevant market. *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S.

377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). A plaintiff's case must include proof of the relevant product market. *Key Fin. Planning Corp.,* 828 F.2d at 642–43; *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1025–26 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 601, 121 L.Ed.2d 537 (1992). We agree with the district court that Smalley's definition of the relevant product market is fatal to its § 2 claim and to its § 1 market allocation claim.

■ Smalley defines the relevant product market as the sale of a single product, Eccobond 56C, to a single customer, Thiokol. *See* Pretrial Order, Stipulation 17, I Appellant's App.Tab G at 5. The record indicates that Thiokol was only one of many customers for Eccobond 56C. Other consumers must be accommodated in determining the relevant product market. Purchasing constraints on a single consumer, such as a required competitive bidding procedure, do not change that conclusion; the fundamental objective of our antitrust laws is to promote fair competition for the benefit of all consumers. *See Seidenstein v. National Medical Enterprises, Inc.,* 769 F.2d 1100, 1106 (5th Cir.1985); *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 558 (7th Cir.1980). We conclude that the district court correctly applied the law and facts, and we must uphold its summary judgment on the federal antitrust claims.

With regard to Smalley's state law claims, we have considered the arguments in the briefs and examined those portions of the record submitted to us by the parties. After this review we are satisfied that the district court properly analyzed the issues and correctly applied the law. We cannot add significantly to the analysis of the district court and therefore also AFFIRM the judgment of the district court on these claims for substantially the reasons stated in the district court's summary judgment order. *See* 808 F.Supp. at 1513–16.